IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN FRALISH, individually and on behalf of others similarly situated,<br>          Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br>          Defendant. | Case No. 3:22-cv-00336<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

1. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2343 (2020).

2. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") repeatedly called Plaintiff's cell phone number playing prerecorded messages for the purpose of encouraging Plaintiff to purchase its insurance goods and services, most notably in a cluster of calls that occurred in July 2021. Plaintiff never consented to these calls, and his phone number was on the National Do Not Call Registry when he received them.

3. Given the automated nature of robocall violations, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for Liberty Mutual's illegal, prerecorded-voice calls, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

4. Plaintiff John Fralish thus brings this action seeking money damages and injunctive relief on behalf of similarly situated persons, to secure redress for Liberty Mutual's

nonconsensual, artificial- or prerecorded-voice calls to cellular telephone numbers, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## INTRODUCTION

5. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

6. As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

7. Liberty Mutual made prerecorded-voice telemarketing calls to Plaintiff's cell phone number without his consent, and Plaintiff files this class action complaint on behalf of himself and others similarly situated, seeking relief from its illegal calling practices.

## PARTIES

8. Plaintiff John Fralish is a natural person who resides in St. Joseph County, Indiana, in this District. Plaintiff received the calling at issue in this case to his cell phone number while in this District.

9. Defendant Liberty Mutual Insurance Company is a Massachusetts corporation headquartered at 175 Berkeley Street, Boston, MA 02116. Liberty Mutual does regular and continuous business in Indiana, including in this District. Liberty Mutual maintains physical offices in Indiana, including at 3454 Douglas Rd., Ste. 220, South Bend, IN 46635, in this District.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

11. The Court also has Class Action Fairness Act jurisdiction because, on information and belief (including based on the automated nature of Liberty Mutual's calls and its size as one of the largest insurance companies in the country), the nationwide class is comprised of at least ten thousand members, at least one class member is a citizen of a different state from where any Defendant is a citizen, and because the aggregate damages exceed $5,000,000, exclusive of fees, costs and interest.

12. The Court has personal jurisdiction over Liberty Mutual, because it sent the calls that are the subject of this lawsuit to Plaintiff and hundreds or thousands of others, into this District.

13. Liberty Mutual exploits the Indiana market in relation to the insurance-related

products and services it attempted to sell to Plaintiff Fralish and the class in this case. Indeed, it systematically, continuously, and deliberately did and attempted to do business in this District and throughout Indiana, and generated revenue as a consequence of resulting sales to Indiana consumers—including through the telemarketing calls at issue here. And not only that, but Liberty Mutual thereafter performs on those sales by providing the insurance-related products and services marketed and purchased during its telemarketing calls to Indiana consumers.

14. Liberty Mutual purposefully availed itself of the privilege of doing business in Indiana, and purposefully directed its business activities into this state—and it is those contacts with this forum from which the claims of Plaintiff and the class in this matter arise out of or relate to. Plaintiff's and the class' injuries here directly relate to (and, indeed, arise out of) Liberty Mutual's affirmative efforts to advertise to and serve the Indiana market, and maintenance of this action in this District therefore does not offend traditional notions of fair play and substantial justice. The Court has personal jurisdiction over Liberty Mutual.

15. Venue is appropriate in this District because Plaintiff received the calls that are the subject of this case while in this District.

**FACTS**

16. Plaintiff is the subscriber and user for residential cellular telephone number 571-xxx-5098 to which Liberty Mutual has made multiple, unsolicited calls using an artificial or prerecorded voice.

17. Liberty Mutual called Plaintiff using caller ID (479) 279-6439 on at least the following occasions:

    a. Three calls on July 17, 2021, at approximately 9:43 a.m., 12:54 p.m., and 1:37 p.m.;

    b. Two calls on July 18, 2021, at approximately 11:26 a.m. and 3:09 p.m.;

    c. Two calls on July 19, 2021, at approximately 10:26 a.m. and 5:25 p.m.;

    d. One call on July 20, 2021, at 11:22am;

    e. One call on July 21, 2021, at 9:50 a.m.

18. For example, the call received July 17, 2021 at 9:44 a.m. Liberty Mutual left Plaintiff the following voicemail message that obviously played a prerecorded voice:

> For over 100 years, we've provided secure, reliable, and affordable auto insurance. To review a quote that could save you 100's, you can call us back at this number. If you've changed your mind and are no longer interested, you can call us back toll-free at (888) 475-4204 to cancel the quote and be removed from our list.

19. As another example, on July 17, 2021, at approximately 1:39 p.m. Liberty Mutual left Plaintiff the following voicemail message using a prerecorded voice:

> … [Liberty Mut]ual. Understanding your coverage options shouldn't be so hard. Let us guide you through the process of finding auto insurance coverage that fits your lifestyle and finances. To review a low-rate quote, you may call us back at this number. If you've changed your mind and are no longer interested, you can call us back toll-free at (888) 475-4204 to cancel the quote and be removed from our list.

20. As another example, on July 18, 2021, at approximately 11:28 a.m. Liberty Mutual left Plaintiff the following voicemail message using a prerecorded voice:

> [At Liberty Mut]ual, we understand that finding auto insurance takes time and is often hard to understand. We'll help you take care of this! To review a quote, you may call us back at this number. If you've changed your mind and are no longer interested, you can call us back toll-free at (888) 475-4204 to cancel the quote and be removed from our list.

21. As another example, on July 20, 2021, at approximately 11:24 a.m. Liberty Mutual left Plaintiff the following voicemail message using a prerecorded voice:

> [At Liberty] Mutual, we haven't had much luck reaching you over the past few days. It only takes a few minutes to find auto insurance that fits your situation and offers great savings. To review an affordable quote, you may call us back at this number. If you've changed your mind and are no longer interested, you can call us back toll-free at (888) 475-4204 to cancel the quote and be removed from our list.

22. All of the calls Plaintiff received from Liberty Mutual played a voice that had been recorded ahead of time that Plaintiff – and anyone else listening – can plainly tell given the intonation and how, for example, identical parts of the same recording were repeated across different calls.

23. The above calls were all made by Liberty Mutual for the purpose of encouraging Plaintiff to purchase its insurance goods or services.

24. On information and belief, Plaintiff received additional prerecorded calls from Liberty Mutual, too. Plaintiff expects Liberty Mutual to be able to identify all the calls it made to his and other class members' cell phones in discovery.

25. Plaintiff did not consent or otherwise agree to receive the calls at issue from Liberty Mutual to his cell phone number.

26. Indeed, during pre-suit discussions, Liberty Mutual explained that its calls were aimed at reaching someone other than Plaintiff.

27. Liberty Mutual's violations were negligent. Alternatively, they were willful and knowing.

28. Liberty Mutual has been sued in the past for similar telemarketing violations, and its executives and legal teams were on actual notice that its practices were resulting in nonconsensual calls to consumers' phones like those alleged here. *See, e.g., Johansen v. Liberty Mutual Group Inc.*, No. 1:15-cv-12920 (D. Ma.) (Liberty Mutual settled TCPA do-not-call violation claims with consumer, and then tried to seek indemnity from its third-party vendors); *Smith v. Liberty Mutual Ins. Co.*, No. 1:20-cv-11583 (D. Ma.) (consumer sued Liberty Mutual for alleged TCPA robocall violations). Nonetheless, Liberty Mutual has continued to reap the benefits of nonconsensual prerecorded calls, choosing profits over consumer privacy and safety.

29. Plaintiff and the class have been damaged by Liberty Mutual's calls. Their seclusion and privacy was improperly invaded, Liberty Mutual's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Liberty Mutual's calls were annoying and a nuisance, and wasted the time of Plaintiff and the class. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (finding TCPA violations present concrete injury-in-fact sufficient for Article III standing); *Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (noting congressional findings of consumer "outrage" as to autodialed and prerecorded-voice calls).

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of a class consisting of:

> **Robocall Class**: All cellular subscribers and/or residential subscribers in the United States whose telephone number Liberty Mutual, or some third party on its behalf, called using an artificial or prerecorded voice, where prior to such call there existed no signed, written agreement with the recipient that included a disclosure informing the person signing that: (A) By executing the agreement, such person authorizes Liberty Mutual to deliver or cause to be delivered to the signatory telemarketing calls using an artificial or prerecorded voice; and (B) the person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
>> **Wrong Number Subclass**: Plaintiff alleges a subclass of persons who – as in Plaintiff's case – Defendant has alleged opt-in data for *someone*, but not for the subscriber of the subject telephone number at the time of Liberty Mutual's call.

31. Upon information and belief, there were more than 1,000 persons with Indiana area codes who received calls as identified in the Robocall Class definition, in 2021 alone. Similarly, upon information and belief, there are more than 500 persons with Indiana area codes who fall within the Wrong Number Subclass.

32. Common questions of law or fact exist as to all members of the class and

subclass, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common include but are not limited to:

    a. Whether the calls to Plaintiff and the class were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders

    b. Whether Liberty Mutual had valid express written consent of the subscribers who received such calls, before making such calls;

    c. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other class members are entitled to treble damages under 47 U.S.C. § 227(b)(3).

33. Plaintiff's claims are typical of the claims of the other members of the class and subclass. The factual and legal bases of Liberty Mutual's liability to Plaintiff and the other class and subclass members are the same: Liberty Mutual violated the TCPA by causing artificial- or prerecorded-voice telemarketing calls to be made to the cellular telephone number of each member of the class and subclass, without permission.

34. Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has no interests that might conflict with the interests of the class and subclass. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

35. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action

would entail.  There are, on information and belief, thousands of class and subclass members, such that joinder of all members is impracticable.

36.     No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

37.     Liberty Mutual have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class and subclass, thereby making relief appropriate with respect to the class and subclass as a whole.  Prosecution of separate actions by individual members of the class and subclass, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

38.     The identity of the class and subclass are, on information and belief, readily identifiable from Liberty Mutual's or its vendors' records.

## COUNT I
### Robocall TCPA Violations

39.     Plaintiff re-alleges and incorporates all prior allegations. Plaintiff brings this count on behalf of himself and the Robocall Class and Wrong Number Subclass.

40.     It is a violation of the TCPA to call cellular or residential telephones and play an artificial or prerecorded voice.

41.     Liberty Mutual initiated or caused to be initiated calls to the cellular and residential telephone numbers of Plaintiff and the other members of the class and subclass defined above using an artificial or prerecorded voice.

42.     These calls were made even though Liberty Mutual did not have prior express consent from subscribers who received such calls.

43. These calls and violations were willful or knowing.

44. To the extent that some of the calls to Plaintiff and the class and subclass were made by vendors of Liberty Mutual, Liberty Mutual is liable for those calls, too.

45. As a result of Liberty Mutual's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class and subclass were harmed and are each entitled to a minimum of $500 in damages for each violation; treble damages if violations are found to have been willful or knowing.

WHEREFORE, Plaintiff John Fralish, individually and on behalf of the class and subclass, respectfully requests that the Court enter judgment against Liberty Mutual for:

A. Certification of the class and subclass as alleged herein;

B. Damages, pursuant to 47 U.S.C. § 227(b)(3);

C. An injunction:

- prohibiting Liberty Mutual from making – or accepting business derived from – prerecorded message calls, unless Liberty Mutual has first obtained the express consent of the subscriber before making the call;

- Requiring Liberty Mutual to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Liberty Mutual's and its vendors' outbound calls – including calls originating from lead generators – to ensure that Liberty Mutual had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis for no less than five years.

- Requiring Liberty Mutual to include a working, automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls.

D. Attorneys' fees and costs, as permitted by law; and

E. Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: April 28, 2022

JOHN FRALISH, individually and
on behalf of others similarly situated

By:  /s/ Alexander H. Burke

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*


### Document Preservation Demand

Plaintiff demands that Defendant preserve all records, and direct that all (sub)vendors, agents and other third parties with relevant documents or data do so, too. Defendant should obtain all call data, lead data, and other relevant documents from all applicable (sub)vendors or third parties – particularly if they are located overseas – ***before*** terminating or otherwise taking any steps that might alter its relationship with them. Our experience is that lead generators and other vendors often remove customer access to call records upon termination. Defendant should gather these records first, before taking any steps that might remove access to these types of records. Plaintiff will assist with reasonable costs of preservation; please contact the attorneys listed here to discuss.