**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JOHN FRALISH, individually and on behalf of others similarly situated,<br>Plaintiff, | ) | Case No. 3:22-cv-336-DRL-MGG |
| v. | ) | |
| LIBERTY MUTUAL INSURANCE COMPANY,<br>Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff respectfully asks that the Court grant him leave to file an Amended Complaint, attached as Exhibit 1. In support of this motion, Plaintiff states as follows:

This class action alleges that calls made by or on behalf of Defendant Liberty Mutual Insurance Company ("Liberty") violated the Telephone Consumer Protection Act's prohibition against calling a cellular telephone number or residential line for telemarketing purposes using an artificial or prerecorded voice. 47 C.F.R. § 64.1200(a)(2)-(3). Plaintiff seeks damages and injunctive relief on behalf of himself and others who received these calls. 47 U.S.C. § 227(b)(3).

Plaintiff requests leave to amend in order to: (a) add an additional named plaintiff, Yevonne Powers, who is a member of the class articulated in the original complaint, (b) conform the allegations to facts learned in discovery, and (c) modify the class definition to exploit the gaps in Liberty's consent policies and procedures learned through recent discovery efforts.

For example, on about February 14, 2024, Plaintiff learned during a deposition of Liberty's Senior Media Director Ryan Hemker that Liberty's lead generation, TCPA consent, and compliance efforts are – coincidentally – managed from the South Bend, Indiana area, in this District. This is significant, because Plaintiff now knows that each of the TCPA violations

alleged in this action "arises out of" and directly "relates to" Liberty's Indiana-based activities, relevant to personal jurisdiction and venue in the Northern District of Indiana for out-of-state TCPA plaintiffs such as Yevonne Powers. The transcript of this deposition was not complete until March 8, 2024. Exhibit 2, Hemker Dep.

Plaintiff also seeks leave to amend in order to narrow the class definition to exploit the deficiencies in Liberty's TCPA consent policies and practices. For example, Plaintiff learned that Liberty's lawyers and compliance department review, approve, and keep detailed records of each and every website from which it purchases marketing leads to robocall. Those records include the alleged "consent language" for each website, the font size for those consent disclosures, the contrast of those disclosures (i.e., how dark the typeface appears), and whether there may be fraud associated with the lead. Plaintiff adds allegations concerning such, in order to strengthen the claims raised. Plaintiff received testimony concerning this process from Jornaya during a deposition on March 19, 2024, and received the transcript for this deposition on April 4, 2024.

Plaintiff also learned that Liberty's TCPA compliance partner Jornaya *warned* Liberty that the lead associated with Plaintiff Fralish's phone number was unverified, meaning that Jornaya was unable to confirm whether the lead was valid. Certain of the lead data for newly-proposed plaintiff Powers, too, was unverified, leading to the conclusion that Liberty set lax guardrails for the leads it purchases and robocalls, substantially raising the likelihood that such leads were never valid in the first instance. Plaintiff learned the above through testimony taken from Jornaya on March 19, 2024, the transcript for which he received on April 4, 2024.

The proposed modifications also conform to recent clarifications from the FCC that "prior express written consent," requires full compliance with the E-Sign Act, including obtaining consent to engage in an electronic transaction separately, apart, and *before* engaging in

an electronic signature transaction: "[I]f compliance with the federal [E-Sign Act] … is required for the consumer's signature, then all the elements of E-Sign must be present" including compliance with "[its] mandate for E-Sign consent before writings can be provided in electronic records in 15 U.S.C. § 7001(c)…." *FCC 2023 Order*, 2023 WL 8826682, at *9, ¶35 & n.90 (FCC Dec. 18, 2023) (quoting senatorial comments with approval).

For these and the below reasons, Plaintiff's motion for leave to amend should be granted.

## I. BACKGROUND

Plaintiff filed this class action against Defendant Liberty Mutual Insurance Company ("Liberty"), to obtain redress for prerecorded-voice (i.e., "robocall") telemarketing violations under the Telephone Consumer Protection Act ("TCPA"), 47 C.F.R. § 64.1200(a)(2)-(3). Liberty filed its answer on May 31, 2022, Dkt. 6, and amended its answer on June 21, 2022. Dkt. 10.

The Court's Scheduling Order and Memorandum of Status Conference set February 10, 2023, as the last date for the parties to amend the pleadings without leave of Court, and indicated that, thereafter, "any amendments to the pleadings must be by motion and leave of court." Dkt. 20, Order p. 2. Since then, and at the parties' joint request, the Court has extended the discovery period thrice, with a current fact discovery cutoff of August 28, 2024. Dkt. 61, 100, 133.

## II. LEGAL STANDARD

Unless the deadline for amendments has passed, a motion for leave to amend a complaint is evaluated pursuant to Fed.R.Civ.P. 15(a)(2), which provides that courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). Because the amendment date in the Scheduling Order was the "last date for the parties to amend the pleadings <u>without</u> leave of court," the Court should consider this motion pursuant to Fed.R.Civ.P. 15(a)(2). Dkt. 20 at 2 (emphasis original); *Latitude Service Company, Inc. v. Reese*, 2023 WL 3563625, at *1 (N.D.Ind. Mar. 6, 2023).

If the Plaintiff has shown good cause, then the Court should allow the amendment unless there is a good reason to deny it, such as futility, undue delay, prejudice, or bad faith. *Faigh v. Elkhart Cnty. Community Corrections*, 2022 WL 1090631, at *2 (N.D.Ind. April 11, 2022).

"[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). "When a plaintiff requests … leave to amend [her complaint], district courts should 'freely give leave when justice so requires.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 2018 WL 6295272, at *12 (7th Cir. Dec. 3, 2018) (quoting Fed. R. Civ. P. 15(a)(2)).

## III. <u>ARGUMENT</u>

### A. Good cause exists to permit these amendments.

Here, good cause exists to grant Plaintiff leave to amend his complaint. The proposed changes are factually meaningful, but do not alter the meat-and-bones of the case: that Liberty robocalled millions of consumers without their "prior express written consent." Additionally, adding Yevonne Powers as a named plaintiff may alleviate some of the vitriol in the case arising from Liberty's suspicions concerning Plaintiff Fralish. Powers is a member of the originally-pleaded class, and has substantively identical claims: She received Liberty Mutual robocalls on her residential cell phone line, and Liberty claims a "prior express written consent" defense based upon generic language in a lead generator's purported website, without proper E-Sign consent and without proper consent language.

Plaintiff has been reasonably diligent in seeking these amendments. Ms. Powers engaged counsel on November 16, 2023, who since then have aggressively investigated her claim by issuing discovery requests to Liberty and a subpoena to its lead aggregation vendor, All Web Leads. Plaintiff files this motion after synthesizing those discovery responses in light of the depositions of Liberty and Jornaya taken in March 2023, as well as the *FCC 2023 Order*, 2023

WL 8826682 (FCC Dec. 18, 2023). Additionally, Liberty has not been forthcoming with information about its robocalling, which has stalled the discovery and factfinding process. Plaintiff has been diligent in pursuing discovery from Liberty, and has filed multiple discovery motions in attempts to learn about its consent-related policies and practices. *E.g.,* Dkt. 101.

Plaintiff learned more in the approximately three hours of testimony from Mr. Hemker than in the prior two years of back-and-forth with Liberty's counsel.[1] For example, Plaintiff's discovery request RFP 4 (1st Set) asked for "all data concerning any opt in for leads or phone numbers [concerning phone numbers Liberty robocalled during the class period]." However, Liberty's discovery responses are equivocal as to whether it has any such data, and it claims the data need not be produced because of Liberty's unsubstantiated contention that it "*had* the called party's prior express written consent to make the call[s]." Dkt. 101-3 at RFP 2 (p. 5), objections incorporated by Def.'s Resp. to RFP 4 (pp. 7-8). Mr. Hemker, on the other hand, testified that Liberty's compliance team and attorneys review and approve all consent disclosures before Liberty purchases leads that rely on such for TCPA consent, and that Liberty has the alleged consent data and consent-review parameters concerning every lead it called at its fingertips via its TCPA compliance vendor Jornaya's online portal. Ex. 2, Hemker Dep. at 16:10-20:1.

This is material because it means that Liberty's counsel approved the robocalling of marketing leads relying upon consent language and disclosures that do not comply with the TCPA. The TCPA allows robocalling with "prior express written consent," but such consent is

---

[1] Discovery has largely been in a holding pattern since Plaintiff filed his motion to compel discovery on November 23, 2022, Dkt. 37, with Liberty refusing to produce much of anything and its vendors largely waiting to see what Liberty would produce before making more substantive productions. After the Court denied all discovery motions without prejudice on September 8, 2023, Dkt. 98, and unsuccessful further conferrals with Liberty on discovery and the potential briefing of a limited legal issue, Dkt. 99 ¶¶ 4-5, Plaintiff refiled his pending motion to compel discovery on December 1, 2023, Dkt. 101, which remains pending.

not satisfied by purchasing non-specific leads. *In re Urth Access, Inc.*, 2022 WL 17550566, at *6 (FCC Dec. 8, 2022) (website that purported to secure consent for a hyperlinked list of 5,000 "marketing partners" was "not sufficient to demonstrate that the called parties consented to the calls from any one"); *FCC 2023 Order*, 2023 WL 8826682, at *7-8 (finding purchase of non-specific leads through daisy-chains of third parties an "abuse"). The leads called in this case were not Liberty-specific and are, therefore, non-compliant: Instead, Liberty purchased generic "opt in" leads in bulk through third-party lead aggregators, which purport to reflect the consumer's consent to be called generally or, at best, from a hyperlinked list of potentially hundreds (or thousands) of different "marketing partners." *E.g.,* Ex. 1-B (2,000+ member "provider network" produced by the lead generator for Fralish's lead).

The recent *FCC 2023 Order* also implicates this case because it rebuts arguments Plaintiff's counsel see in other TCPA cases (and expect to see here) that a consumer's purported "opt in" through a third-party website alone satisfies the TCPA's written consent requirement under 47 C.F.R. § 64.1200(f)(9).[2] Rather, the FCC's new order makes clear that click boxes and similar forms of purported online "consent" must separately satisfy *all* elements of the E-Sign Act to comply, including its disclosure requirements under 15 U.S.C. § 7001(c) that "telemarketers routinely ignore." *FCC 2023 Order*, 2023 WL 8826682, at *31 (¶ 35 n.90). This clarification affects this case, because the "consent" Liberty claims to have arises from purported online opt-ins. Thus, updating the complaint's factual allegations to address the FCC's position with information learned in discovery will strengthen Plaintiff's pleadings and better demarcate

[2] Indeed, Plaintiff's counsel is currently briefing this same argument in another case, where the defendant argued that its retention of voice recordings of calls with consumers alone constitutes a "written agreement" under the TCPA because it purportedly does not have to satisfy the E-Sign Act's separate disclosure requirements for electronic records. The *FCC 2023 Order* establishes that the defendant's position is wrong.

the parties' respective positions vis-à-vis Liberty's consent defense.[3]

In short, Plaintiff could not have realistically sought the requested amendment of his complaint before now because discovery has been more or less at a standstill, and it was only through two depositions last month that Plaintiff has been able to learn substantive information that merits modifying his complaint. Additionally, Plaintiff's counsel did not represent (or even know about) Ms. Powers until after the amendment deadline passed, and the FCC issued its order clarifying its position on consent and the E-Sign Act after the deadline. Because Plaintiff has been diligent in bringing this motion in light of these recent events, good cause exists to extend the amendment deadline.

**B. Leave to amend should be freely given.**

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave [to amend] should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *NewSpin Sports, LLC*, 2018 WL 6295272, at *12 ("The Supreme Court has interpreted [Fed. R. Civ. P. 15(a)(2)] to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend.") (citation omitted). Here, no apparent or declared reason exists to deny Plaintiff leave to amend his complaint:

<u>Diligence/No Undue Delay</u>. As discussed in the prior section, Plaintiff diligently seeks

---

[3] To be clear, Plaintiff does not contend that new regulations the FCC adopted will apply retroactively. Rather, the FCC's order clarifies how "prior express written consent" should *always* have been interpreted, and introduces new regulatory language to make it "unequivocally clear" that one-seller consent is required. *FCC 2023 Order*, 2023 WL 8826682, at *7 (¶ 30).

leave to amend the month following his receipt of the transcript of his deposition of Ryan Hemker, whom Liberty identified as the employee most knowledgeable about its consent practices, and the same month as his receipt of the first part of Jornaya's Fed.R.Civ.P. 30(b)(6) deposition.[4] This request to amend comes without most of the materials Plaintiff seeks in discovery, as well. Dkt. 37, renewed at Dkt. 101. Accordingly, no undue delay exists.

No Bad Faith. There is no bad faith, either. The proposed amendments were spurred by information learned in discovery and the investigatory process, and in light of a recent FCC order. Plaintiff brings this motion for the legitimate purpose of bolstering his claims and conforming his allegations to the most recently-acquired facts and FCC precedent.

No Undue Prejudice. There is no undue prejudice. Plaintiff is not changing the substance of his claim *at all*: It is still a one-count, nonconsensual robocall case, and so the scope and nature of this case remains unchanged from the current complaint. Moreover, discovery remains largely as it was when this case began: To date, Liberty has produced just 32 documents in discovery, totaling 126 pages of materials—including *everything* Liberty says it has for Ms. Powers. Thus, adding her to the case will not present any additional burden or prejudice on Liberty. Plaintiff has also already propounded discovery pertaining to the factual and legal issues as to class members, which the parties are continuing to work through and/or will resolve through pending motion practice, Dkt. 101.

Moreover, Ms. Powers is a member of the class, and received the same type of Liberty Mutual prerecorded-voice telemarketing calls as Plaintiff Fralish. Thus, in addition to bolstering Plaintiff's allegations about Liberty's wrongful practices and supporting the predominating

[4] Due to time constraints, the Jornaya deposition was kept open. The parties expect to complete the deposition at a later date.

commonality of class members' experience, adding Ms. Powers as a named plaintiff will help promote judicial economy by avoiding duplicate litigation on the same issues through an inefficient, possible separate proceeding.

Amendments Not Futile. These amendments are not futile; they are based upon facts learned in discovery and the most recent, applicable FCC order. The substance of Plaintiff's claims won't change: The proposed amendments continue to seek redress for the same TCPA robocall telemarketing violations alleged in the current complaint, which Liberty previously found sufficient to answer, Dkt. 6, 10. Numerous courts have found similar allegations that the defendant made or caused nonconsensual autodialed or prerecorded-voice calls to be made sufficient to survive a motion to dismiss. In *Johansen v. GVN Michigan, Inc.*, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015), for example, Judge Posner found it sufficient that the plaintiff alleged that he received robocalls. Moreover, the fact that the plaintiff was allegedly informed during one of the calls he received that it was made for the defendant was sufficient to allege that all the similar calls he received were for the defendant, as well. *Id.*[5] Plaintiff's proposed complaint similarly alleges nonconsensual robocalls by and on behalf of Liberty, and is supported by evidence produced in this case, such as the Plaintiff-specific discovery Liberty produced and recent Hemker and Jornaya depositions.

In short, Plaintiff believes that it is important to amend his complaint to add clarity and substance to his existing allegations, and to bolster his and the class's claims by adding Ms.

---

[5] See also *Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) (denying motion to dismiss where TCPA defendant allegedly robocalled consumer outside of scope of consent provided); *Bilek v. Fed. Ins. Co.*, 2021 WL 10298826, at *2 (N.D. Ill. Oct. 12, 2021) (denying TCPA defendant's motion to dismiss where it allegedly authorized the nonconsensual robocalls at issue); *Stamer v. Seas & Assocs., LLC*, 2017 WL 279674, at *3 (N.D. Ill. Jan. 13, 2017) (similar); *Johansen v. GVN Michigan, Inc.*, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861 (N.D. Ill. 2020).

Powers. As such, he respectfully asks that the Court grant him leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court permit Plaintiff to file an amended complaint. The proposed amended complaint is attached as Exhibit 1.

Dated: April 29, 2024

Respectfully submitted,

JOHN FRALISH, individually and on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 29, 2024, I caused the foregoing to be served via the CM/ECF system on Liberty's following counsel of record:

Michael L. Mallow
Rachel A. Straus
SHOOK HARDY & BACON LLP
2049 Century Park E., Suite 3000
Los Angeles, CA 90067
mmallow@shb.com
rstraus@shb.com

Jeremiah S. Wikler
SHOOK HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
jwikler@shb.com

Matthew O. Sitzer
SHOOK HARDY & BACON LLP
111 S. Wacker Dr., Ste. 4700
Chicago, IL 60606
msitzer@shb.com

Paul Heeringa
MANATT PHELPS & PHILLIPS LLP
151 N. Franklin St., Ste. 2600
Chicago, IL 60606
pheeringa@manatt.com

*/s/ Alexander H. Burke*